**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Oscar Adrian Cisneros,<br><br>                    Petitioner,<br><br>v.<br><br>David Shinn, *et al.*<br><br>                    Respondents. | No. CV-19-0275-TUC-JAS (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Petitioner Oscar Adrian Cisneros's *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Petition") (Doc. 1).  Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 21), and Petitioner has not replied. The Petition (Doc. 1) is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.   The Magistrate Judge recommends that the District Court dismiss the Petition (Doc. 1).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Initial Charge, Trial, and Sentencing*

The Arizona Court of Appeals stated the facts[2] as follows:

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

[2] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465,

In February 2016, an officer with the criminal interdiction unit of the Safford Police Department saw a car parked left of center, within twenty feet of an intersection, and in front of a house known for drug activity. *See* A.R.S. § 28-873(A)(7).  After the officer pulled behind the parked car, Cisneros, who had been sitting in the driver's seat, exited, stood up, and closed the door.  The officer approached Cisneros and told him to park the car with the right wheels to the curb; Cisneros responded that he was waiting for someone.  The officer asked for identification and Cisneros said his driver's license was inside the house, but identified himself and gave his birthdate.  Noticing that Cisneros had become nervous and that he had a bulge in his pocket, the officer asked whether he had a weapon, and Cisneros said he had "nothing."  Suspicious that he was armed, the officer attempted to frisk Cisneros.  Cisneros broke free and fled.

The officer called for assistance and remained with the car.  He then glanced through the window and saw a wallet with identification and cash, "some bags on the center console," and the keys in the ignition.  Feeling "it was important that none of that be disturbed," the officer instructed another officer to guard the car while he searched for Cisneros.  Upon returning from an unsuccessful search, the officer became concerned that the car might contain weapons, drugs, or even a person in the trunk.  Feeling "responsib[le] for this car" and that he "had an absolute duty to take care of [it]," the officer decided to tow it pursuant to department policy because he feared "the department could be liable for the property in the vehicle, the vehicle itself, or the vehicle could be a danger to the community."  Before doing so, however, the officer requested that a canine unit respond to smell the exterior of the car.  The unit arrived, but the dog did not alert.  In preparation for towing, the officer opened the car door to inventory its contents and immediately smelled the odor of raw marijuana.

The officer then searched the car and found methamphetamine, heroin, marijuana, hydrocodone, drug paraphernalia, and a "spiked mace club."  Having discovered the drugs and club, the officer determined it would not be appropriate to tow the vehicle to a private lot and decided instead to have another officer drive the car to the police impound lot.

Below, Cisneros argued the officer's decision to tow the car and inventory its contents was "an unlawful subterfuge for a warrantless search" aimed at "rummag[ing] through [his] vehicle for evidence of . . . criminal activity."  The court denied Cisneros's motion to suppress the evidence finding that he had abandoned the car when he fled and that it would have

473–74, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S. Ct. 844, 853, 83 L. Ed. 2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S. Ct. 1198, 1204, 71 L. Ed. 2d 379 (1982).

been "extremely [ir]responsible" for the officer to have left the car parked in front of a house where he believed drug activity to be taking place. Accordingly, the court determined the officer reasonably decided to tow the car pursuant to department policy and the community caretaking function. And, once the officer opened the car door and smelled marijuana, he had probable cause to search the vehicle under the plain-smell doctrine. *See State v. Sisco*, 239 Ariz. 532 ¶ 1 (2016).

After trial, the jury found Cisneros guilty of possession of a dangerous drug for sale, possession of a narcotic drug, possession of marijuana, possession of drug paraphernalia, failure to provide a driver's license or evidence of identity to law enforcement, and two counts of misconduct involving weapons.   The court sentenced Cisneros to a combination of concurrent and consecutive prison terms totaling twenty-two years.

Answer (Doc. 21), *State v. Cisneros*, No. 2 CA-CR 2017-0162, Mem. Decision at 4–5[3] (Ariz. Ct. App. May 7, 2018) (alterations in original) (Exh. "A") (Doc. 21-1).

## B.   Direct Appeal

On November 2, 2017, Petitioner filed his opening brief, alleging three (3) grounds for relief.  *See* Answer (Doc. 21), Appellant's Opening Br., *State v. Cisneros*, No. 2 CA-CR 2017-0162 (Ariz. Ct. App. Nov. 2, 2017) (Exh. "B") (Doc. 21-1).  Petitioner asserted that the trial court erred when it denied his motion to suppress regarding the search of his car, thereby violating Article II § 8 of the Arizona Constitution, as well as Petitioner's rights under the Fourth Amendment of the United States Constitution.  *Id.*, Exh. "B" at 11–30.  First, Petitioner urged that the officer's search of his car was not based on reasonable, articulable suspicion that a crime was being committed, and therefore was not valid under the automobile exception to the Fourth Amendment.  *Id.*, Exh. "B" at 21–24.  Next, Petitioner argued that the officer's search of his car was not a legitimate inventory search but rather a ruse to conduct a warrantless search.  *Id.*, Exh. "B" at 24–26.  Finally, Petitioner asserted that the officer failed to follow the proper procedures for dealing with an abandoned or impounded vehicle and did not have lawful possession of the vehicle at the time of the search.  *Id.*, Exh. "B" at 26–28.  On January 29, 2018, the State filed its Answering Brief.  *See* Answer (Doc. 21), Appellee's Answering Br., *State v. Cisneros*, No.

---

[3] Page citations refer to the CM/ECF page numbers, unless otherwise noted.

1   2 CA-CR 2017-0162 (Ariz. Ct. App. Jan. 29, 2018) (Exh. "C") (Doc. 21-1).  On February

2   15, 2018, Petitioner replied.  *See* Answer (Doc. 21), Appellant's Reply Br., *State v.*

3   *Cisneros*, No. 2 CA-CR 2017-0162 (Ariz. Ct. App. Feb. 15, 2018) (Exh. "D") (Doc. 21-1).

4        On May 7, 2018, the Arizona Court of Appeals affirmed Petitioner's convictions

5   and sentences.  *See* Answer (Doc. 21), *State v. Cisneros*, No. 2 CA-CR 2017-0162, Mem.

6   Decision (Ariz. Ct. App. May 7, 2018) (Exh. "A") (Doc. 21-1).   The appellate court

7   observed that "[t]he circumstances of this case . . . make the . . . questions of whether

8   Cisneros abandoned his car and whether the officer acted within his community-caretaking

9   authority close and difficult."  *Id.*, Exh. "A" at 7.  The appellate court determined, however,

10  that it "need not resolve [these questions] because an independent basis justifying the

11  officer's entry into the car appears in the record[.]"  *Id.*  The appellate court noted that

12  "[f]ollowing Cisneros's statement that he could not provide identification because his

13  wallet was in the house, the officer had probable cause to believe Cisneros had 'knowingly

14  misrepresent[ed] a fact for the purpose of . . . misleading a peace officer' when the officer

15  looked through the car window and saw a wallet containing identification."  *Id.* (alterations

16  after first in original) (citing A.R.S. § 13-2907.01(A)).  The appellate court concluded that

17  the officer "had probable cause to believe Cisneros had lied either about whether he had

18  identification with him, about his actual identity, or both . . . [and] was entitled to open the

19  car door to confirm whether the wallet contained Cisneros's identification and, if so, to

20  seize the identification as evidence of that crime."  *Id.* (citing *United States v. Ross*, 456

21  U.S. 798, 820–21 (1982)).  The appellate court also opined that "[b]ecause the officer was

22  justified in opening the car door to seize the identification, he was in a lawful position to

23  smell the odor of marijuana coming from the car."  Answer (Doc. 21), *State v. Cisneros*,

24  No. 2 CA-CR 2017-0162, Mem. Decision (Ariz. Ct. App. May 7, 2018) (Exh. "A") (Doc.

25  21-1) at 7 (citing *State v. Sisco*, 239 Ariz. 532 at ¶ 11, 373 P.3d 549, 552 (Ariz. 2016)).

26  Accordingly, the appellate court held that the trial court did not err when it denied

27  Cisneros's motion to suppress.  *Id.*

28        Petitioner did not seek review with the Arizona Supreme Court.  *See* Answer (Doc.

21), *State v. Cisneros*, No. 2 CA-CR 2017-0162, Mandate (Ariz. Ct. App. Oct. 2, 2018) (Exh. "E") (Doc. 21-1).  On October 2, 2018, the Arizona Court of Appeals issued its mandate.  *Id.*

       **C.**    ***Post-Conviction Relief Proceeding***

       On April 28, 2017, Petitioner filed his Notice of Post-Conviction Relief ("PCR"). Answer (Doc. 21), Petr.'s Not. of PCR, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. Apr. 28, 2017) (Exh. "F") (Doc. 21-1).  On May 2, 2017, the Rule 32 court assigned counsel and outlined a briefing schedule for filing of the PCR petition.  Answer (Doc. 21), Notice, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. May 2, 2017) (Exh. "G") (Doc. 21-1).  Petitioner's appointed PCR counsel did not file a PCR petition or a Notice of No Colorable Claims.  *See* Answer (Doc. 21), *State v. Cisneros*, No. CR2016-00075, Order Finding Claim Six to be Colorable Dismissing All Other Claims, and Setting A Status Hearing (Graham Cnty. Super. Ct. Oct. 20, 2020) (Exh. "N") (Doc. 21-2).  On April 23, 2019, Petitioner "at least attempted to file a hand-written Petition for Post Conviction Relief[.]"  *Id.*, Exh. "N" at 169.

       On April 29, 2019, Petitioner filed a second Notice of Post-Conviction Relief and sought appointment of counsel.  Answer (Doc. 21), Petr.'s Not. of PCR, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. Apr. 29, 2019) (Exh. "I") (Doc. 21-1) at 136–37.  Petitioner attached his handwritten, April 23, 2019, PCR petition to his second notice.  *See id.*, Exh. "I" at 139–59.  On June 14, 2019, the Rule 32 court appointed new PCR counsel for Petitioner.  *See* Answer (Doc. 21), *State v. Cisneros*, No. CR2016-00075, Not. of Receipt of Not. for PCR and Order Appointing Counsel (Graham Cnty. Super. Ct. June 14, 2019) (Exh. "J") (Doc. 21-1).  On May 27, 2020, PCR counsel submitted Petitioner's April 23, 2019, handwritten PCR petition.  Answer (Doc. 21), Submission of Mr. Cisneros' Handwritten Pet., *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. May 27, 2020) (Exh. "H") (Doc. 21-1).

       **1.**  **Handwritten PCR Petition**

       On April 23, 2019, Petitioner signed his *pro se* Petition for PCR.  *See* Answer (Doc.

21), Petr.'s Not. of PCR, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. Apr. 29, 2019) (Exh. "I") (Doc. 21-1) at 139–59.  Petitioner attached a copy to his second Notice of PCR.  *Id.*  Petitioner's PCR counsel also submitted it on his behalf.  *See* Answer (Doc. 21), Submission of Mr. Cisneros' Handwritten Pet., *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. May 27, 2020) (Exh. "H") (Doc. 21-1).  Petitioner urged that his "failure to file a timely Petition for Post-Conviction Relief was without fault on [his] part." *Id.*, Exh. "H" at 116.  Petitioner raised three (3) grounds for relief, each alleging ineffective assistance of counsel.  *See id.*, Exh. "H."   First, Petitioner urged that trial counsel was ineffective for failing "to argue competently a Fourth Amendment issue[,]" specifically that counsel omitted "the argument that defendant was unreasonably seiz[ed] by police." *Id.*, Exh. "H" at 116, 120–21.  Petitioner asserted that trial counsel "[f]ailed to file [a] motion to dismiss multiplicitous counts on Double Jeopardy counts." *Id.*, Exh. "H" at 116, 120.  Petitioner also asserted that trial counsel "[f]ailed to object to the imposition of multiple sentences for the same offense on Double Jeopardy ground[s]."  Answer (Doc. 21), Submission of Mr. Cisneros' Handwritten Pet. at 116, 121, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. May 27, 2020) (Exh. "H") (Doc. 21-1).  Second, Petitioner asserted that appellate counsel was ineffective by "fail[ing] to present a meritorious Fourth Amendment claim . . . [and] [f]ail[ing] to raise Double Jeopardy claims." *Id.*, Exh. "H" at 116.  Petitioner urged that due to appellate counsel's alleged failure to argue that he was seized "within the meaning of the Fourth Amendment[,]" Petitioner was prejudiced and "did not have a full and fair hearing of his Fourth Amendment claim." *Id.*, Exh. "H" at 121–22 (citations omitted).  Finally, Petitioner asserted ineffective assistance of Rule 32 counsel for an alleged "fail[ure] to file a PCR petition timely[.]" *Id.*, Exh. "H" at 116.

## 2.  Amended PCR Petition

On May 27, 2020, counsel filed an Amended Petition for PCR.  *See* Answer (Doc. 21), Petr.'s Amended Pet. for PCR, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. May 27, 2020) (Exh. "K") (Doc. 21-2).  Counsel included the ineffective

assistance of trial and appellate counsel claims initially raised in Petitioner's handwritten PCR and numbered them Claims 1–3. *Id.*, Exh. "K" at 10–11. Counsel added six (6) additional claims for relief. *Id.*, Exh. "K" at 11–20. Petitioner's fourth claim urged that the Second Amended Information was multiplicitous "[b]ecause it charged two separate offenses on the basis of a single act" in violation of his due process rights. *Id.*, Exh. "K" at 11. Fifth, Petitioner asserted that his double jeopardy right was violated when he was convicted on Counts VI and VII, as they were the same offense. *Id.*, Exh. "K" at 13. Sixth, Petitioner urged that "the Trial Court abused it's [sic] discretion when it imposed a consecutive sentence for Count VII" because it involved identical elements to Count VI. Answer (Doc. 21), Petr.'s Amended Pet. for PCR, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. May 27, 2020) (Exh. "K") (Doc. 21-2) at 14. This claim relied on the test in *State v. Gordon*, 161 Ariz. 308, 778 P.2d1204 (Ariz. 1989). Answer (Doc. 21), Exh. "K" at 14. Seventh, Petitioner asserted that the jury was misled, because the trial court failed to instruct that a conviction on the weapons misconduct charges required something more than mere possession of a weapon. *Id.*, Exh. "K" at 15–17. Eighth, Petitioner urged ineffective assistance of both trial and appellate counsel. *Id.*, Exh. "K" at 17. Petitioner alleged that trial counsel provided ineffective assistance by "fail[ing] to include certain specific grounds for suppression of Mr. Cisneros' arrest[] and for suppression of the evidence seized by Officer Medlin[;] . . . fail[ing] to move to strike Count VI and Count VII of the Second Amended Information as muliplicitous [sic], and on double jeopardy grounds[;] . . . fail[ing] to objection [sic] to the imposition of consecutive sentences for Count VI and Count VII, on grounds such sentences violate A.S.S. § 13-116 [sic][;] [and] fail[ing] to ask for a Jury Instruction that properly instructed the Jury about what they must find before rendering a guilty verdict for Count VI and Count VII." *Id.*, Exh. "K" at 18. Petitioner did not make any specific claims against appellate counsel. Ninth, Petitioner urged that the alleged errors outlined in his PCR petition violated his due process rights. *Id.*, Exh. "K" at 19–20.

In response, the State argued that given the *pro se* petition, the Amended Petition

1    should not be allowed and that, in any event, the *pro se* petition was untimely.  Answer
2    (Doc. 21), State's Response to Petr.'s Pet. for PCR, *State v. Cisneros*, No. CR2016-00075
3    (Graham Cnty. Super. Ct. June 23, 2020) (Exh. "L") (Doc. 21-2) at 143–47, 153–54.  The
4    State also opposed Petitioner's claims on their merits.  *Id.*, Exh. "L" at 147–53.   On
5    September 10, 2020, Petitioner filed his reply.  *See* Answer (Doc. 21), Petr.'s Re-
6    Submission of Mr. Cisneros' Reply Br., *State v. Cisneros*, No. CR2016-00075 (Graham
7    Cnty. Super. Ct. Sept. 10, 2020) (Exh. "M") (Doc. 21-2).

8                    **3.  <u>Rule 32 Court Order</u>**

9            On October 20, 2020, the Rule 32 court issued its order finding Claim Six to be
10   colorable and dismissing all other claims.   Answer (Doc. 21), *State v. Cisneros*, No.
11   CR2016-00075, Order Finding Claim Six to Be Colorable, Dismissing All Other Claims,
12   and Setting a Status Hr'g (Graham Cnty. Super. Ct. Oct. 20, 2020) (Exh. "N") (Doc. 21-
13   2).  The Rule 32 court reviewed the circumstances surrounding Petitioner's delay in filing
14   his PCR petition and concluded that the delay was justified.  *Id.*, Exh. "N" at 169–70.
15   Regarding Claims One and Two, the Rule 32 court that "[e]ven if the Defendant could
16   show that Trial or Appellate Counsel's performances were deficient, he cannot show any
17   prejudice." *Id.*, Exh. "N" at 170.  The court observed that "[g]iven the Court of Appeals
18   holding on appeal that Officer Medlin 'was justified in opening the car door' and therefore
19   'was in a lawful position to smell the odor of marijuana' any independent grounds for
20   suppression would not have changed the Court of Appeals' holding." *Id.*  The Rule 32
21   court dismissed Claims One and Two.  *Id.*  As to Claim Three, the PCR court dismissed
22   the claim because "the court has not dismissed [Petitioner's] PCR as untimely" and
23   therefore he could not show prejudice.  Answer (Doc. 21), *State v. Cisneros*, No. CR2016-
24   00075, Order Finding Claim Six to Be Colorable, Dismissing All Other Claims, and Setting
25   a Status Hr'g (Graham Cnty. Super. Ct. Oct. 20, 2020) (Exh. "N") (Doc. 21-2) at 170.  The
26   Rule 32 court found Counts VI and VII were "separate offenses involving separate
27   subsections of the statute" and therefore not multiplicitous or violative of Petitioner's
28   Double Jeopardy rights.  *Id.*, Exh. "N" at 171.  As such, the Rule 32 court dismissed Claims

Four and Five.

In response to Claim Six, the State had only argued untimeliness but suggested "that if the court agreed with Defendant's analysis, the State would request a resentencing and would argue that Counts VI and VII run concurrently to one another but consecutively to Count I." *Id.*, Exh. "N" at 172. The Rule 32 court concluded Claim Six was colorable. *Id.* The Rule 32 court reviewed its jury instructions regarding Counts VI and VII, and determined that they were proper. *Id.* As such, the court dismissed Claim Seven. Answer (Doc. 21), *State v. Cisneros*, No. CR2016-00075, Order Finding Claim Six to Be Colorable, Dismissing All Other Claims, and Setting a Status Hr'g (Graham Cnty. Super. Ct. Oct. 20, 2020) (Exh. "N") (Doc. 21-2) at 172. The Rule 32 court considered each of Petitioner's claims regarding alleged ineffective assistance of trial and appellate counsel. *Id.* The court held that Petitioner could not prove prejudice, which warranted dismissal of Claims Eight and Nine. *Id.*, Exh. "N" at 172–73.

Petitioner did not file a petition for review of the Rule 32 court's order.

### 4.  Subsequent Briefing and Resentencing

On November 10, 2020, the Rule 32 Court held a status conference and directed the parties to file briefs regarding Claim Six/Possible Re-Sentencing on or before December 18, 2020. Answer (Doc. 21), *State v. Cisneros*, No. CR2016-00075, Minute Entry—Status Conf. Re: Pet. for PCR (Graham Cnty. Super. Ct. Nov. 10, 2020) (Exh. "O") (Doc. 21-2). On December 31, 2020, Petitioner filed his Memorandum Re: Claim 6. Answer (Doc. 21) Petr.'s Mem. Re Claim 6, *State v. Cisneros*, No. CR2016-00075 (Graham Cnty. Super. Ct. Dec. 30, 2020) (Exh. "P").

On January 29, 2021, the Rule 32 court ordered that the April 24, 2017, sentencing minute entry be amended to reflect concurrent terms of imprisonment. Answer (Doc. 21), *State v. Cisneros*, No. CR2016-00075, Minute Entry—Order Amending Sentencing (Graham Cnty Super. Ct. Jan. 29, 2021) (Exh. "R"). On the same date, the PCR court amended the sentencing minute entry to reflect that Petitioner's sentences for Count I, VI, and VII would be run concurrently with credit for time served. Answer (Doc. 21), *State v.*

1   *Cisneros*, No. CR2016-00075, Minute Entry—Sentence of Imprisonment With
2   Consecutive Probation as to CR2016-00075 (Graham Cnty Super. Ct. Jan. 29, 2021) (Exh.
3   "S") at 207.

4       **D.**    ***The Instant Habeas Proceeding***

5          On May 16, 2019, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of
6   Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1).  Petitioner
7   asserts a single ground for relief, with subparts.  *Id.* at 4.  Petitioner claims that the "State
8   courts did not provided [sic] a full and fair hearing on Petitioner's Fourth Amendment
9   claim in violation of the United States Constitution[.]"  *Id.*  As part of this claim, Petitioner
10  alleges that 1) the officer "exceeded the scope of the traffic detention and prolonged the
11  detention to investigate without reasonable articulated suspicious [sic] of criminal
12  activity"; 2) Petitioner's detention was a seizure; 3) the officer's "action [wa]s inconsistent
13  with [a] Terry style pat-down" and was therefore unreasonable; 4) the traffic stop was
14  pretextual; and 5) "Petitioner did not abandoned [sic] the car, and its warrantless search
15  constitutes an unreasonable search that can not be justified as an inventory search of
16  abandoned property."  *Id.*

17         On May 31, 2019, Petitioner filed a Motion to Stay Habeas Corpus Proceeding
18  (Doc. 3) seeking to stay the instant case "to exhauts [sic] his claim of ineffective assistance
19  of counsel raised in a Rule 32 petition filed April 29th 2019 in Graham County Superior
20  Court."  Petr.'s Mot. to Stay (Doc. 3) at 1.  After several extensions of time to respond, on
21  October 23, 2019, the State filed its notice of no opposition to a stay.  Respondents'
22  Response to Petr.'s Mot. to Stay Habeas Corpus Proceeding (Doc. 14).  On March 6, 2020,
23  this Court granted Petitioner's motion to stay, and the matter was stayed.  Order 3/6/2020
24  (Doc. 15).  On December 13, 2021, Petitioner filed a Motion to Lift Stay Habeas Corpus
25  Proceedings (Doc. 17).   On December 14, 2021, Respondents filed it notice of no
26  opposition.  Respondents' Response to Mot. to Lift Stay (Doc. 18).  On December 21,
27  2021, the Court lifted the stay of this proceeding, granted Petitioner until February 7, 2022,
28  to file an amended petition if he chose, and directing Respondents to answer any First

Amended Petition, or if no such petition were filed, to answer the original petition.  *See* Order 12/21/2021 (Doc. 19).

Petitioner did not file an amended petition.  On March 21, 2022, Respondents filed their Answer (Doc. 21), and Petitioner has not replied.

## II.    STANDARD OF REVIEW

### A.    *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).  Correcting errors of state law is not the province of federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991).  Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S. Ct. 2842, 2854, 168 L. Ed. 2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)).  Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] . . . demands that state-court decisions be given the benefit of the doubt."  *Pinholster*, 563 U.S. at 181, 131 S. Ct. at 1398 (citations and internal quotation marks omitted).

1    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat.
2    1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The
3    "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims
4    have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19, 134 S. Ct. 10, 16,
5    187 L. Ed. 2d 348 (2013).  Federal courts reviewing a petition for habeas corpus must
6    "presume the correctness of state courts' factual findings unless applicants rebut this
7    presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465,
8    473–74, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)).
9    Moreover, on habeas review, the federal courts must consider whether the state court's
10   determination was unreasonable, not merely incorrect.  *Id.*, 550 U.S. at 473, 127 S. Ct. at
11   1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013).  Such a determination is
12   unreasonable where a state court properly identifies the governing legal principles
13   delineated by the Supreme Court, but when the court applies the principles to the facts
14   before it, arrives at a different result.  *See Harrington v. Richter*, 562 U.S. 86, 131 S. Ct.
15   770, 178 L. Ed. 2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L.
16   Ed. 2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004).  "AEDPA
17   requires 'a state prisoner [to] show that the state court's ruling on the claim being presented
18   in federal court was so lacking in justification that there was an error . . . beyond any
19   possibility for fairminded disagreement.'" *Burt*, 134 S. Ct. at 10 (quoting *Harrington*, 562
20   U.S. at 103, 131 S. Ct. at 786–87) (alterations in original).

21        **B.    Exhaustion of State Remedies**

22        Prior to application for a writ of habeas corpus, a person in state custody must
23   exhaust all of the remedies available in the State courts.  28 U.S.C. § 2254(b)(1)(A).  This
24   "provides a simple and clear instruction to potential litigants: before you bring any claims
25   to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*,
26   455 U.S. 509, 520, 102 S. Ct. 1198, 1204, 71 L. Ed. 2d 379 (1982).  As such, the exhaustion
27   doctrine gives the State "the opportunity to pass upon and correct alleged violations of its
28   prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158

1    L. Ed. 2d 64 (2004) (internal quotations omitted).  Moreover, "[t]he exhaustion doctrine is

2    principally designed to protect the state courts' role in the enforcement of federal law and

3    prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518, 102 S. Ct. at 1203

4    (internal citations omitted).  This upholds the doctrine of comity which "teaches that one

5    court should defer action on causes properly within its jurisdiction until the courts of

6    another sovereignty with concurrent powers, and already cognizant of the litigation, have

7    had an opportunity to pass upon the matter."  *Id.* (quoting *Darr v. Burford*, 339 U.S. 200,

8    204, 70 S. Ct. 587, 590, 94 L. Ed. 761 (1950)).

9        Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long

10   as the applicant "has the right under the law of the State to raise, by any available procedure

11   the question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has been fairly

12   presented to the state courts, the exhaustion requirement is satisfied."  *Picard v. Connor*,

13   404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971).  The fair presentation

14   requirement mandates that a state prisoner must alert the state court "to the presence of a

15   federal claim" in his petition, simply labeling a claim "federal" or expecting the state court

16   to read beyond the four corners of the petition is insufficient.  *Baldwin v. Reese*, 541 U.S.

17   27, 31–33, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004) (rejecting petitioner's assertion

18   that his claim had been "fairly presented" because his brief in the state appeals court did

19   not indicate that "he was complaining about a violation of federal law" and finding the

20   justices' opportunity to read a lower court decision addressing the federal claims

21   insufficient to support fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999)

22   (holding that petitioner failed to exhaust federal due process issue in state court because

23   petitioner presented claim in state court only on state grounds).  Furthermore, in order to

24   "fairly present" one's claims, the prisoner must do so "in each appropriate state court."

25   *Baldwin*, 541 U.S. at 29, 124 S. Ct. at 1349.  "Generally, a petitioner satisfies the exhaustion

26   requirement if he properly pursues a claim (1) throughout the entire direct appellate process

27   of the state, or (2) throughout one entire judicial postconviction process available in the

28

1  state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz,

2  *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

3  In Arizona, however, for non-capital cases "review need not be sought before the

4  Arizona Supreme Court in order to exhaust state remedies."  *Swoopes v. Sublett*, 196 F.3d

5  1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz.

6  2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).   Additionally, the

7  Supreme Court has further interpreted § 2254(c) to recognize that once the state courts

8  have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the

9  same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350,

10  109 S. Ct. 1056, 1060, 103 L. Ed. 2d 380 (1989).

11  ## C.   *Procedural Default*

12  ### 1.  **In General**

13  "A habeas petitioner who has defaulted his federal claims in state court meets the

14  technical requirements for exhaustion; there are no state remedies any longer 'available' to

15  him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 650

16  (1991).  The Ninth Circuit Court of Appeals explained the difference between exhaustion

17  and procedural default as follows:

18  The exhaustion doctrine applies when the state court has never been
19  presented with an opportunity to consider a petitioner's claims and that
20  opportunity may still be available to the petitioner under state law.  In
   contrast, the procedural default rule barring consideration of a federal claim
21  applies only when a state court has been presented with the federal claim, but
   declined to reach the issue for procedural reasons, or if it is clear that the state
22  court would hold the claim procedurally barred.  *Franklin v. Johnson*, 290
   F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations
23  omitted).  Thus, in some circumstances, a petitioner's failure to exhaust a
   federal claim in state court may *cause* a procedural default.  *See Sandgathe*
24  *v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975,
25  987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner
   failed to exhaust state remedies and the court to which the petitioner would
26  be required to present his claims in order to meet the exhaustion requirement
   would now find the claims procedurally barred.'") (quoting *Coleman v.*
27  *Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

28

1    *Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005).   "Together, exhaustion and

2    procedural default promote federal-state comity."  *Shinn v. Jones*, — S. Ct. —, 2022 WL

3    1611786 at * 7 (2022).

4         Thus, a prisoner's habeas petition may be precluded from federal review due to

5    procedural default in two ways.  First, where a "petitioner failed to exhaust state remedies

6    and the court to which the petitioner would be required to present his claims in order to

7    meet the exhaustion requirement would now find the claims procedurally barred."

8    *Coleman*, 501 U.S. at 735 n.1, 111 S. Ct. at 2557 n.1 (citations omitted).    In this

9    circumstance, the federal court "must consider whether the claim could be pursued by any

10   *presently available* state remedy.   *Cassett*, 406 F.3d at 621 n.6 (quotations and citations

11   omitted) (emphasis in original).  Second, where the petitioner presented his claims to the

12   state court, which denied relief based "on a state law ground that is independent of the

13   federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 728, 111 S.

14   Ct. at 2554.  Federal courts are prohibited from review in such cases because they have "no

15   power to review a state law determination that is sufficient to support the judgment,

16   [because] resolution of any independent federal ground for the decision could not affect

17   the judgment and would therefore be advisory."  *Id.*  This is true whether the state law basis

18   is substantive or procedural.  *Id.* (citations omitted).

19        In Arizona, a petitioner's claim may be procedurally defaulted where he has waived

20   his right to present his claim to the state court "at trial or on appeal or in any previous

21   collateral proceeding[.]"  Ariz. R. Crim. P. 32.2(a)(3) (2022).  If an asserted claim "raises

22   a violation of a constitutional right that can only be waived knowingly, voluntarily and

23   personally by the defendant[,]" such claim is not automatically precluded.  *Id.*   Neither

24   Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional

25   magnitude" requiring personal knowledge before waiver.  *See id.*; *see also Stewart v. Smith*,

26   202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth Circuit Court of Appeals recognized that

27   this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are

28   better suited to make these determinations."  *Cassett*, 406 F.3d at 622.

- 15 -

## 2.  Overcoming a Procedural Bar

Where a habeas petitioner's claims have been procedurally defaulted, a petitioner must show cause and actual prejudice to overcome the bar on federal review. *Teague v. Lane*, 489 U.S. 288, 298, 109 S. Ct. 1060, 1068, 103 L. Ed. 2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S. Ct. 2661, 2666, 91 L. Ed. 2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial.").  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims.").  Actual prejudice requires a habeas petitioner to "show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S. Ct. at 2648 (emphasis in original) (internal quotations omitted).  Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S. Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 1572–73, 71 L. Ed. 2d 783 (1982)).  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.

Ct. 853, 862, 122 L. Ed. 2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S. Ct. 2616, 2627, 91 L. Ed. 2d 364 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S. Ct. at 862.  Further, to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

## III.    STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation.  *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).  The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2).

1 Respondents do not dispute the timeliness of Cisneros's petition, and the Court has
2 independently reviewed the records and finds that his original petition (Doc. 1) is timely
3 pursuant to 28 U.S.C. § 2244(d)(1)(A).

4

5 **IV.   ANALYSIS**

6        In general, Fourth Amendment claims are not cognizable in this habeas corpus
7 proceeding.  *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed. 2d 1067
8 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth
9 Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the
10 ground that evidence obtained in an unconstitutional search or seizure was introduced at
11 his trial.").  "The relevant inquiry is whether petitioner had the opportunity to litigate his
12 claim, not whether he did in fact do so or even whether the claim was correctly decided."
13 *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citations omitted).  "[I]n the
14 case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted
15 defendant is usually asking society to redetermine an issue that has no bearing on the basic
16 justice of his incarceration."  *Stone*, 428 U.S. at 491 n.31, 96 S. Ct. at 3051 n.31.
17 Additionally, "the exclusionary rule is a judicially created remedy rather than a personal
18 constitutional right . . . [which is of] minimal utility . . . when sought to be applied to Fourth
19 Amendment claims in a habeas proceeding."  *Stone*, 428 U.S. at 494 n.37, 96 S. Ct. at 3052.

20        Prior to trial, Petitioner filed a motion to suppress arrest and evidence based on an
21 allegedly unlawful inventory search that was used as subterfuge for a warrantless search;
22 the vehicle was not abandoned and could have been secured at the scene; and a lack of
23 policies or procedure within the police department for conducting inventory searches.  *See*
24 Answer (Doc. 21), Def.'s Mot. to Suppress Arrest and Evidence, *State v. Cisneros*, No. CR
25 2016-00075 (Graham Cnty. Super. Ct. June 15, 2016) (Exh. "U") (Doc. 21-3).  The trial
26 court held an evidentiary hearing regarding Petitioner's motion.  Answer (Doc. 21), *State*
27 *v. Cisneros*, No. CR 2016-00075, Evid. Hr'g Tr. (Graham Cnty. Super. Ct. Aug. 17, 2016)
28 (Exh. "X") (Doc. 21-3).  After hearing testimony and based on the evidence presented, the

1    trial court denied Defendant's motion.  *Id.* at 100:7–109:17.[4]

2        On direct appeal, Petitioner alleged that the officer's search of his car was not based

3    on reasonable, articulable suspicion that a crime was being committed, and therefore was

4    not valid under the automobile exception to the Fourth Amendment; the officer's search of

5    his car was not a legitimate inventory search but rather a ruse to conduct a warrantless

6    search; and that the officer failed to follow the proper procedures for dealing with an

7    abandoned or impounded vehicle and did not have lawful possession of the vehicle at the

8    time of the search.[5]  Answer (Doc. 21), Appellant's Opening Br., *State v. Cisneros*, No. 2

9    CA-CR 2017-0162 (Ariz. Ct. App. Nov. 2, 2017) (Exh. "B") (Doc. 21-1) at 11–28.  The

10   appellate court observed that "[t]he circumstances of this case . . . make the . . . questions

11   of whether Cisneros abandoned his car and whether the officer acted within his community-

12   caretaking authority close and difficult."  Answer (Doc. 21), *State v. Cisneros*, No. 2 CA-

13   CR 2017-0162, Mem. Decision (Ariz. Ct. App. May 7, 2018) (Exh. "A") (Doc. 21-1) at 7.

14   The appellate court determined, however, that it "need not resolve [these questions]

15   because an independent basis justifying the officer's entry into the car appears in the

16   record[.]"  *Id.*  The appellate court noted that "[f]ollowing Cisneros's statement that he

17   could not provide identification because his wallet was in the house, the officer had

18   probable cause to believe Cisneros had 'knowingly misrepresent[ed] a fact for the purpose

19   of . . . misleading a peace officer' when the officer looked through the car window and saw

20   a wallet containing identification."  *Id.* (alterations after first in original) (citing A.R.S. §

21   13-2907.01(A)).  The appellate court concluded that the officer "had probable cause to

22   believe Cisneros had lied either about whether he had identification with him, about his

23   actual identity, or both . . . [and] was entitled to open the car door to confirm whether the

24   wallet contained Cisneros's identification and, if so, to seize the identification as evidence

25   of that crime."  *Id.* (citing *United States v. Ross*, 456 U.S. 798, 820–21 (1982)).  The

26   _____

27       [4] Page and line designations refer to the page and line of the original hearing transcript, not
     the CM/ECF page number.

28       [5] Broadly construed these represent subparts 1, 4, and 5 of the instant habeas.

1   appellate court also opined that "[b]ecause the officer was justified in opening the car door
2   to seize the identification, he was in a lawful position to smell the odor of marijuana coming
3   from the car." *Id.*  Accordingly, the appellate court held that the trial court did not err when
4   it denied Cisneros's motion to suppress.  Answer (Doc. 21), *State v. Cisneros*, No. 2 CA-
5   CR 2017-0162, Mem. Decision (Ariz. Ct. App. May 7, 2018) (Exh. "A") (Doc. 21-1) at 7
6   (citing *State v. Sisco*, 239 Ariz. 532 at ¶ 11, 373 P.3d 549, 552 (Ariz. 2016)).

7          In his PCR petitions, the only claims relevant to the alleged Fourth Amendment
8   violation raised by Petitioner were in the context of ineffective assistance of counsel.  *See*
9   Answer (Doc. 21), Submission of Mr. Cisneros' Handwritten Pet., *State v. Cisneros*, No.
10  CR2016-00075 (Graham Cnty. Super. Ct. May 27, 2020) (Exh. "H") (Doc. 21-1); Answer
11  (Doc. 21), Petr.'s Amended Pet. for PCR, *State v. Cisneros*, No. CR2016-00075 (Graham
12  Cnty. Super. Ct. May 27, 2020) (Exh. "K") (Doc. 21-2).  Petitioner did not raise any Fourth
13  Amendment issues to the Arizona Court of Appeals.

14         Based on the foregoing, the Court finds that Petitioner had a full and fair opportunity
15  to litigate any alleged Fourth Amendment violation in the state courts.[6]  Accordingly, the
16  Court finds Petitioner's claim precluded upon habeas review.  *See Stone*, 428 U.S. at 494,
17  96 S. Ct. at 3052.

18

19  **V.     CONCLUSION**

20         Based upon the foregoing, the Court finds that Petitioner Oscar Adrian Cisneros's
21  habeas claim is non-cognizable and recommends that his Petition (Doc. 1) be dismissed.

22

23  **VI.    RECOMMENDATION**

24         For the reasons delineated above, the Magistrate Judge recommends that the District
25  Judge enter an order DISMISSING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ

26

27  _____

28         [6] This finding extends to subparts 2 and 3, which were not raised to the state courts, because
    "[t]he relevant inquiry is whether petition had the opportunity to litigate his claim[s], not whether
    he did in fact do so[.]"  *Ortiz-Sandoval*, 81 F.3d at 899.

of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Judge.  If objections are filed, the parties should use the following case number:  **CV-19-0275-TUC-JAS**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 7th day of June, 2022.

Honorable Bruce G. Macdonald
United States Magistrate Judge